NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

BETTY DON, an individual; ROBERT MEYERS and JANICE MEYERS,
husband and wife, *Plaintiffs/Appellants*,

*v.*

ENTRUST ARIZONA, LLC, an Arizona limited liability corporation,
*Defendant/Appellee.*

No. 1 CA-CV 13-0495
FILED 07-15-2014

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2011-053892
The Honorable Alfred M. Fenzel, Judge
The Honorable Michael R. McVey, Judge

**AFFIRMED**

———————————————

COUNSEL

The Breslo Law Firm, LLC, Scottsdale
By John C. Breslo
*Counsel for Plaintiffs/Appellants*

Galbut & Galbut, Phoenix
By Olivier A. Beabeau, Keith R. Galbut, Cameron A. Fine
*Counsel for Defendant/Appellee*

## MEMORANDUM DECISION

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Peter B. Swann and Chief Judge Diane M. Johnsen joined.

**G E M M I L L**, Judge:

¶1        Betty Don and Robert and Janice Meyers (collectively "Plaintiffs") appeal from the trial court's entry of summary judgment in favor of Entrust Arizona, LLC on Plaintiffs' breach of contract claim. We affirm.

## BACKGROUND

¶2        Entrust Arizona is a third-party administrator of self-directed retirement accounts. A client deposits retirement funds into a custodial account administered by Entrust and directs Entrust how to invest the funds. Entrust is not a custodian of its clients' funds, but processes paperwork related to the funds and arranges for the transfer of funds from the clients' custodial account to the party designated by the clients. All investments administered by Entrust are self-directed by the client. Entrust receives an annual fee and a per-transaction fee for its services.

¶3        Plaintiffs held accounts with Entrust. Each completed an Individual Retirement Account (IRA) Application ("the Application"), which included the following language:

> Until such time as I change or revoke the following designation, I hereby instruct the Custodian[1] to follow the investment directions which I provide to the third party administrator[2] in investing and reinvesting the principal and interest as confirmed by direction letters and other agreements with the third party administrator, for the above

---

[1] The "Custodian" was a bank that is not a party to this appeal.

[2] Entrust was the third party administrator.

referenced IRA or other account for which the third party administrator serves as record keeper and administrator.

. . . .

Until such time as I change or revoke the following designation, I hereby instruct the Custodian to follow the investment directions which I provide to Administrator in investing and reinvesting the principal and interest, as confirmed by direction letters to Administrator from the undersigned, for the above referenced IRA or other Custodial account for which Administrator serves as record keeper.

. . . .

Custodian and Administrator may act solely on the written instruction, designation or representation of the Accountholder, and the Accountholder agrees to hold Custodian and Administrator harmless from all liabilities and expenses incurred in connection with any action taken in reliance upon Accountholder's written instructions, designations and representations, or in the exercise of any right, power or duty of Custodian or Administrator, its agents or assigns. . . .

Custodian, Administrator and their respective agents or assigns have no responsibility or fiduciary role whatever related to or in connection with the account in taking any action related to any purchase, sale or exchange instructed by the undersigned or the undersigned's agents, including but not limited to suitability, compliance with any state or federal law or regulation, income or expense, or preservation of capital or income.

Plaintiffs were also parties to a Traditional Individual Retirement Custodial Account Agreement ("Custodial Agreement"), an Internal Revenue Service form, which contained the following language:

8.10 Responsibilities: Depositor[3] agrees that all information and instructions given to the Custodian[4] or Administrator by the Depositor is complete and accurate and that the Custodian or Administrator shall not be responsible for any incomplete or inaccurate information provided by the Depositor[.]

9.01 Investment of Contributions: In conjunction with sections 8.10 and 8.11 of this Agreement, at the direction of the Depositor, the Administrator or Custodian shall invest all contributions to the account and earnings thereon in investments which may be considered administratively feasible by the Custodian. . . . The Custodian or Administrator shall be responsible for the execution of such orders and for maintaining adequate records thereof.

9.02 Indemnification[:] The Custodian or Administrator shall have no duty other than to follow the written investment directions of the Depositor, and shall be under no duty to question said instructions and shall not be liable for any investment losses sustained by the Depositor under any circumstances.

¶4 Meyers executed three "Buy Direction Letters" in August 2005, using an Entrust form containing language that "authorize[d] and direct[ed] the administrator [Entrust] . . . to BUY" three notes secured by three specific residential properties. Don, using the same Entrust form, executed two substantially similar Buy Direction Letters in September 2006 directing Entrust to buy two notes on two specific residential properties. The Buy Direction Letters included the following language:

I understand that my account is self-directed and that the administrator and/or trustee or custodian do not review the merits, appropriateness and/or suitability of an investment in general, or in connection with my account in particular.

---

[3] The "Depositor" is identified as the "individual whose name appears on the accompanying IRA application form," which in this case is Don and Meyers, respectively.

[4] The Custodial Agreement also designated the same bank as the Custodian and Entrust as the Administrator.

. . . .

> I understand that neither the administrator nor trustee or custodian is a "fiduciary" for my account as such term is defined in the Internal Revenue Code, ERISA, or any applicable federal, state, or local laws. I agree to release, indemnify, defend and hold the administrator and trustee or custodian harmless from any claims arising out of this investment, including, but not limited to claims that an investment is not prudent, proper, diversified or otherwise in compliance with ERISA, the Internal Revenue Code or any other applicable federal, state or local laws.

¶5            All five Buy Direction Letters indicated that the notes should be secured by first position liens. Unbeknownst to Plaintiffs, each of the five properties was encumbered by at least one prior deed of trust at the time of Plaintiffs' purchases. All five notes were purchased through Mortgage Notes, Inc. or MNI Properties, LLC, entities owned by Guillermo De La Vara, with De La Vara preparing the Buy Direction Letters on behalf of Plaintiffs.

¶6            Mortgage Notes, Inc. filed for bankruptcy in June 2007. Plaintiffs filed claims in the bankruptcy and received distributions. The Arizona Corporation Commission later found that De La Vara had, among other things, misrepresented or failed to disclose to some investors the number of pre-existing liens attached to certain properties, resulting in properties being subject to multiple lien investments that were often under-secured. The Corporation Commission ordered De La Vara and his wife to pay over $5.7 million in restitution. De La Vara was eventually indicted by the Arizona Attorney General on charges related to the investments solicited from Plaintiffs and others, to which he pleaded guilty and was sentenced to prison.

¶7            Plaintiffs filed their complaint against Entrust in May 2011 alleging a single count of breach of a written contract and seeking damages. The trial court granted summary judgment for Entrust and awarded Entrust attorneys' fees of $141,070.50 and costs of $1,584.52 pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-341.01(A), -1838, and -1840, the Application, the Custodial Agreement, and the Buy Direction Letters, and entered judgment in favor of Entrust. Plaintiffs filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(a)(1) and -2101(A)(1).

**ANALYSIS**

¶8      Plaintiffs assert that the trial court erred in granting summary judgment for Entrust because the Application, the Custodial Agreement, and the Buy Direction Letters form a contract that imposed a duty on Entrust to purchase first position liens in accordance with the Buy Direction Letters. Plaintiffs argue that because Entrust failed to purchase first position liens, Entrust breached the contract. Summary judgment may be granted when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). In reviewing a motion for summary judgment, we review de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Penn-America Ins. Co. v. Sanchez*, 220 Ariz. 7, 11, ¶ 23, 202 P.3d 472, 476 (App. 2008).

¶9      The Application declares that it and the Custodial Agreement comprise Plaintiffs' agreements with Entrust. Plaintiffs rely on two provisions in the Application that state, "I hereby instruct the Custodian to follow the investment directions which I provide to Administrator." These provisions impose no obligation on Entrust, however, because Entrust is not the Custodian, but the Administrator. Plaintiffs also argue that ¶ 9.02 in the Custodial Agreement, which states that the "Administrator shall have no duty other than to follow the written investment directions of the Depositor," imposed on Entrust a contractual duty to ensure that the investments were secured by first-position liens, as described in the Buy Direction Letters. But this language from the Custodial Agreement is contained in an indemnification provision intended to protect Entrust and limit its obligations and liabilities, not expand them. In ¶ 9.01, however, the Custodial Agreement requires the Administrator to execute investment orders by the Depositor, although that obligation is in conjunction with the Depositor's obligations to ensure "that all information and instructions given to the . . . Administrator . . . is complete and accurate" and that the Administrator "shall not be responsible for any incomplete or inaccurate information provided by the Depositor."

¶10      Accepting that the Custodial Agreement imposes a contractual duty on Entrust to execute Plaintiffs' orders, the question is whether the Buy Direction Letters required Entrust to ensure that the purchased assets were secured by a first position lien. Entrust argues that the documents articulate no specific requirements that Entrust perform due diligence, investigate title, record deeds of trust, or ensure that the agreements between investors and third parties are valid. It asserts that

the Buy Direction Letters were not instructions or contract provisions, but were representations of Plaintiffs' pre-existing investment agreements with De La Vara. We agree.

¶11 On this record, the references to a first position lien in the Buy Direction Letters did not impose a contractual obligation on Entrust to ensure the purchases of first position liens; rather, they reflected the agreements of Plaintiffs with De La Vara. In interpreting a contract, our goal is to determine the intent of the parties. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993). Interpreting the first lien priority provision as a contractual obligation would require Entrust to perform a title search or otherwise investigate lien positions for its clients' chosen investments. Plaintiffs, however, admitted in discovery that Entrust had no obligation to obtain a title report, to negotiate promissory notes or deeds of trust, or to record deeds of trust, and that they did not pay Entrust to obtain a title report or perform due diligence in connection with their investments. In light of these admissions, Plaintiffs could not have intended that Entrust be contractually bound to investigate lien priority of the investments they selected.

¶12 Other portions of the record also indicate that the first position references in the Buy Direction Letters were merely representations of Plaintiffs' agreements with De La Vara. De La Vara's preparation of the Buy Direction Letters for Plaintiffs, who then signed them, demonstrates that Plaintiffs and De La Vara had formed agreements independently of Entrust, further supporting the conclusion that Entrust was a limited participant in the transaction, whose role was to effectuate the already finalized agreement. Under the Custodial Agreement, Plaintiffs were responsible for ensuring that the information provided to Entrust was accurate. No terms in the Custodial Agreement or the Application required Entrust to ensure a transaction's legitimacy or profitability, and neither was a fiduciary duty imposed upon Entrust to protect Plaintiffs as clients.

¶13 Because Plaintiffs' claim does not arise out of a written contract, we need not consider the parties' other arguments. Plaintiffs contend that the trial court's attorneys' fees award to Entrust as the prevailing party was erroneous, but they offer no supporting argument. Plaintiffs have therefore abandoned the issue. *See Modular Systems Inc. v. Naisbitt*, 114 Ariz. 582, 587, 562 P.2d 1080, 1085 (App. 1977) (appellant must state with particularity why or how the trial court erred). Because we affirm the trial court's ruling and Entrust remains the prevailing party, we affirm the award of attorneys' fees.

**¶14** Entrust requests attorneys' fees on appeal pursuant to A.R.S. § 12-341.01(A). In our discretion, we deny the request.

**CONCLUSION**

**¶15** We affirm the grant of summary judgment.



Ruth A. Willingham · Clerk of the Court
FILED: gsh